# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLIFFORD BROCK, et al** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 13-7631** |
| **INTERNATIONAL UNION OF** | : | |
| **OPERATING ENGINEERS, LOCAL** | : | |
| **542 DISTRICT 1** | : | |

**KEARNEY, J.**                                                                                  **October 15, 2015**

## MEMORANDUM

Union members claiming their union hiring hall's policy allowing their union brothers to directly solicit work from contractors constitutes race discrimination based on disparate impact must adduce facts supporting their suspicions. The union members cannot simply allege a hiring hall policy and lost hours without showing some causation or nexus between their alleged injury and the policy allowing all union members the opportunity to privately market their skills to contractors. Pleading a good faith complaint based on perception is much different than defeating a detailed motion for summary judgment. When, as here, the union members rely on undefined statistics without tying them to their case and otherwise cannot show genuine issues of material facts evidencing the union's racial discrimination, disparate impact of facially neutral policies or retaliation arising from the hiring choices of non-party union contractors in their hiring hall, we find the union defendant is entitled to summary judgment dismissing the claims. Plaintiffs may genuinely believe their union is discriminating against them. They just have not produced any specific evidence of the union directing, suggesting, or coercing contractors to hire Caucasian members and not them. We accordingly grant Defendant's motion for summary judgment in the accompanying Order.

## I.    Undisputed Facts[1]

For over twenty (20) years, Plaintiffs Clifford Brock ("Brock") and Oliver Drayton ("Drayton") have been union members of the International Union of Operating Engineers Local 542, District 1 ("Local 542").  Compl. ¶7, 24.  Brock and Drayton are African-American.

Local 542 is a blend of heavy equipment operators in the building and construction industry.  SOF ¶1.  Members of Local 542 are dispatched to work for union contractors through Local 542's "Hiring Hall."  Compl. ¶11; SOF ¶4.  Members not currently working are listed on an "Out of Work" list.  The list is compiled in reverse order, with the member who has been out of work the longest at the top of the list.  SOF ¶8.

Contractors call Local 542 seeking operating engineers on both a short term and long term basis, depending on the job.  When looking for an operator, contractors specify their requirements.  For example, a job may need a crane operator, a backhoe operator or a Dozier operator.  The union maintains a skill card for each member, reporting individual member skill set and certifications.  SOF ¶7.  To meet the contractor's needs, the Hiring Hall generates an out of work list of members meeting the required skill set.  The Hiring Hall reviews the list in reverse order, calling those members who have been out of work the longest.  SOF ¶9-10.  If a

---

[1] Our Policies require a Statement of Undisputed Facts ("SOF") and Appendix ("App.") in support of summary judgment.  In responding to a Motion for Summary Judgment, both this Court's written policies and the Federal Rules of Civil Procedure require Plaintiffs respond to the specific statements of undisputed material fact, and where disputed, direct the Court to factual evidence contradicting the averred facts.  *See* Fed.R.Civ.P. 56(c)(1). Plaintiffs' initial response to summary judgment (ECF Doc. No. 37) contained only generalized denials of Defendant's SOF (ECF Doc. No. 32-4).  After striking Plaintiffs' earlier Opposition as not compliant with our Policies (ECF Doc. No. 38), Plaintiffs' amended Opposition similarly responds to SOF with only generalized denials and no record factual *evidence* in support.  (ECF Doc. No. 39, p.15-16). Having given Plaintiffs a second opportunity to properly support or address its opposition to Defendant's factual evidence, and Plaintiffs' failure to do so, we consider many of Defendant's SOF undisputed.  Fed.R.Civ.P. 56(c)(2).

member is not available, does not answer, or refuses the job, the Hiring Hall calls the next person on the list.  ¶SOF ¶11.

In some situations, union contractors identify members who they do not wish to rehire, for example because of prior safety violations, unsafe operation of equipment, or negligence.  In situations where a contractor has so identified a member, the member is given a copy of the contractor letter and stated reasons, and has ten (10) days to file a grievance contesting the contractor's allegations.  SOF ¶12.

Plaintiffs allege Local 542 formerly referred all work through the Hiring Hall process, but at some undefined point began permitting members to also seek work through "open solicitation," allowing members to solicit contractors directly for work.  Compl. ¶12. Members are now also permitted to solicit jobs on their own outside the Hiring Hall process.  SOF ¶16. Plaintiffs contend the facially neutral policy of permitting members to solicit jobs on their own, outside the Hiring Hall process, results in contractors hand selecting predominantly Caucasian workers for jobs resulting in a disparate impact on non-Caucasian members.

Plaintiffs also allege they "continually" complained about the disparate impact of this open solicitation policy on non-Caucasian union members, "spoke out publicly" about the discriminatory actions, and Defendant labeled them as "troublemakers".  Compl. ¶¶10, 15-17, 27, 32-34.   Plaintiffs further allege they do not receive the hours and wages of their white counterparts, and the union has not represented them fairly.    *Id.*  ¶¶19-20,  43-44.

## II.   **Analysis**

Plaintiffs sue their union for allowing an open solicitation policy under Title VII, 42 U.S.C. §2000e *et seq.*, alleging race discrimination, disparate impact of a facially neutral policy and retaliation.[2]   Local 542 moves for summary judgment.

We find this case once again presents an opportunity to address the parties' obligations under the extraordinary pre-trial summary disposition of cases under Federal Rule of Civil Procedure 56.   Under the well-established standard governing summary judgment motions, "summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Williams v. Wells Fargo Bank,* No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. 2015) (quoting *Wright v. Corning,* 679 F.3d 101, 105 (3d Cir. 2012)); Fed.R.Civ.P. 56(a).   "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).

In moving for summary judgment, defendant bears the burden to show plaintiff has failed to establish one or more essential elements of their case. *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013) (citing *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir.

---

[2] Upon Plaintiffs' request based on concerns regarding his independence relating to their claims and resultant delays, we excepted this case from the Special Master's jurisdiction to evaluate claims of Local 542's racial discrimination first arising in the late 1970s and most recently fully addressed over fourteen years ago in *Jackson v. Local Union 542, Int'l Union of Operating Engineers,* 155 F. Supp. 2d 332, 333 (E.D. Pa. 2001).   As the parties promptly proceeded through discovery in accord with our Scheduling Order, we saw no need to seek the Master's involvement particularly given Plaintiffs' concerns. (ECF Doc. No. 28).

2005)).  Once the moving party satisfies this initial burden, the party opposing the motion must establish a genuine issue as to a material fact. *Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir.1985).

Plaintiffs acknowledge their burden to "make a showing sufficient to establish the existence of every element essential to that party's case, and on which that party will bear the burden of proof at trial."  ECF Doc. No. 39, p. 7 (quoting *Celotrex v. Catrett*, 477 U.S. 371 (1986).  Plaintiffs cannot rest on mere allegations, but must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson,* 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995).  Plaintiffs must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324.  They must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 657 (3d Cir.1990); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir. 1991)(party opposing summary judgment must present more than just 'mere allegations, general denials, or ... vague statements to show the existence of a genuine issue); Fed.R.Civ.P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial.")

The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex,* 477 U.S. at 322.  The mere existence of some evidence in support of the nonmoving party will not be sufficient to deny a summary judgment motion. *Anderson*, 477 U.S.

at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor—that no reasonable jury could find for him, summary judgment is appropriate." *Alveras v. Tacopina,* 226 F. App'x 222, 227 (3d Cir.2007).

Brock and Drayton bring claims under Title VII alleging race discrimination, disparate impact and retaliation.[3] In opposing summary judgment, the entirety of Plaintiffs' evidence consists of statistical wage and hour data purportedly comparing overall contractor work performed by white and non-white Local 542 members, and overall wages earned by white and non-white Local 542 members for periods of time. *See* Pl. Exh. 1-8.[4] This data is not authenticated nor supplemented with any testimonial evidence. "As the United States Supreme Court admonished in [*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 340]: '(S)tatistics . . . come in infinite variety . ... their usefulness depends on all of the surrounding facts and circumstances.'" *Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 312 (1977)(citing *Teamsters*). This data alone fails to meet Plaintiffs' burden to show Local 542 intentionally discriminated against Brock and Drayton.

Brock and Drayton have not directed us to facts allowing the heavily-relied upon statistical reports, purportedly comparing percentage of non-white contractor hours and wages to

---

[3] Plaintiffs' Counts I-II appear mislabeled. We glean from a fair reading of their Complaint Plaintiffs seek relief under Title VII, 42 U.S.C. §2000e *et seq.*, for race discrimination, disparate impact and retaliation.

[4] Ignoring this Court's Policies, Plaintiffs do not cite to or supplement the Appendix compiled by Defendant with documents in support of Summary Judgment. Rather, Plaintiffs attach documents as Exhibits to their Response to Summary Judgment. Despite Plaintiff's non-compliance and after previously striking Plaintiffs' earlier Opposition as not compliant with our Policies (ECF Doc. No. 38), we considered the Exhibits in the light favorable to Plaintiffs.

white contractor hours and wages, to become relevant. Numerous questions arise regarding these statistics, including how and for what purpose they were compiled, and what empirical data was used. We are strained to construe this data in any meaningful way and decline to infer discrimination based solely on this complex assortment of data not directly tied to Brock and Drayton. Without additional factual evidence, affidavits, testimony, meaningful discussion or explanation, these reports do not permit us the wide berth of looking for an inference of disparate impact or retaliation.

### A.  Plaintiffs adduce no evidence of disparate impact.

Plaintiffs contend Local 542's policy of 'open solicitation,' where members are permitted to seek their own employment with a contractor, as opposed to solely being referred by the Hiring Hall, resulted in disparate treatment and/or disparate impact on minority operating engineers. Permitting operators to solicit their own employment and permitting contractors to hand pick operators, Plaintiffs contend, is a veiled attempt to discriminate against minority operators. Plaintiffs maintain Defendants *knew* the open solicitation process would result in less minority operators obtaining work because the contractors tended to prefer non-minority operators.

Plaintiffs concede an action "for disparate treatment under Title VII arises when an employer has 'treated a particular person less favorably than others because of the plaintiff's race, color, religion, sex or national origin.'" ECF Doc. No. 39, p.7 (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 985-86 (1988)). Plaintiffs correctly quote *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000) stating, "the ultimate question in

7

every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Id.* at p. 8.[5]

Plaintiffs do not direct us to testimony, declarations, affidavits, documents or any other evidence from which a jury could find Defendants intentionally discriminated against them. Plaintiffs rely solely on their own perception of disparate impact as well as the above referenced statistical data, purportedly outlining disparity in work hours and wages between white operating engineers and non-white operating engineers, but unsupported by any testimonial or other evidence, and ask the Court to infer from these unverified documents Defendants are liable for intentional, purposeful discrimination toward them.[6]  We are not persuaded.

Plaintiffs' conclusory statements in no way demonstrate disparate impact or create an inference of discrimination as to this issue. *See Jones v. School Dist. of Phila.,* 198 F.3d 403, 414 (3d Cir.1999) (at summary judgment, court rejected plaintiff's attempt to rely on numerous allegations predicated on nothing more than plaintiff's beliefs); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460 (3d Cir.1989) (a party cannot rely on unsupported allegations at summary judgment); s*ee also Harris v. Astellas Pharm.,* No. 13-1663, 2015 WL 5638023, at *9 (W.D. Pa. 2015).

Plaintiffs offer no *evidence*, merely the promise of evidence and testimony at trial.  Their proffered statistical evidence based on data from 2006 is insufficient, in itself, to bring a disputed issue to the jury.  We looked for a showing of gross statistical disparities which may in a proper

---

[5]    While Plaintiffs characterize their claim as disparate treatment, it can only be construed as a disparate impact claim arising from a facially neutral open solicitation policy.

[6]    Plaintiffs further suggest their own testimony at trial will provide sufficient evidence of discrimination.  Plaintiffs are required to show genuine issues of material fact in response to a summary judgment motion and cannot defer this obligation to trial and render summary judgment meaningless.

case constitute *prima facie* proof of a pattern or practice of discrimination. *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 307-08 (1977) (citing *Teamsters, supra*, 431 U.S. at 339). Because Plaintiffs proffered no meaningful comparison data or information comparing skill sets of white and non-white union members, or comparative availability for work, we are unable to find their proffered statistics reliably demonstrate a gross disparity. We agree with Defendant there is no evidence of any positive correlation between a facially neutral "open solicitation policy" and fewer placements for minority operators. Plaintiffs have not offered statistical comparisons sufficient to make a *prima facie* case of disparate impact. Even if the reports were relevant to their claims, Plaintiffs do not extract from these reports pertinent admissible evidence. Moreover, as William McGuire's Certification confirms, the open solicitation policy is the not the only method of placement. (App. 110-113). Many other factors interplay in achieving the final statistical data, as is typical of statistical excerpts.[7]

Mindful of the parties' obligation at this summary judgment stage to direct the Court to <u>specific</u> factual evidence to avoid summary judgment, and not speculation and conjecture, we find Plaintiffs have not produced sufficient evidence to meet their burden opposing Defendant's motion. Plaintiffs' unsubstantiated conclusory allegations,[8] obtuse statistical data and promise of testimonial evidence are insufficient to defeat summary judgment.

---

[7] Similar meaningful evidence is lacking with regard to Plaintiffs' claim of disparity in wages. Plaintiffs do not direct the Court to any evidence showing any individual has ever been paid at a rate other than the rate established for the individual's job classification.

[8] For example, Plaintiffs argue, "Plaintiff Brock will testify these lost days were due to the Defendant's pattern and practice of discrimination…" and "Plaintiff Drayton will testify these lost days were due to the Defendant's pattern and practice of discrimination …" ECF Doc. No. 39, p. 11-12. Plaintiffs cannot rely on suggestions of what evidence will be to defeat summary judgment.

9

## B. Plaintiffs have not shown a retaliation claim.

Plaintiffs seek recovery under Title VII, claiming they suffered retaliation after protesting the union's change in policy. Plaintiffs broadly claim they spoke out publicly and the more they spoke out, the less work Defendant assigned to them. Plaintiffs cite general instances of public or private complaints to the union and claim Defendant labeled them as "troublemakers," but aside from their own general averments, there is no deposition testimony, affidavits or other credible evidence to support Plaintiffs' claims. The entirety of Plaintiffs' opposition to summary judgment is: "Plaintiffs continually complained to the Defendant of their discriminatory practices and no action was taken to correct this discrimination. Instead the Defendant retaliated against the Plaintiffs by reducing the number of work days thus reducing wages and hours..." ECF Doc. No. 39, p. 13.

To establish a *prima facie* case of retaliation, each plaintiff must show: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision. *Fasold v. Justice,* 409 F.3d 178, 188 (3d Cir. 2005); s*ee Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 56–57 (2006); *Walker v. Centocor Ortho Biotech, Inc.,* 558 Fed. Appx. 216, 220 (3d Cir.2014).     To establish the existence of a causal link, Plaintiffs must prove their protected activity was the "but-for cause" of Defendants' alleged adverse action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2534 (2013). If the plaintiff meets this burden, the burden then shifts to the defendant to articulate one or more legitimate, nondiscriminatory reasons for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).     If the defendant produces sufficient reasons for its actions, the plaintiff is then required to demonstrate

that the defendant's asserted rationale is pretextual. *Id.* If the plaintiff cannot carry this burden, the defendant is entitled to summary judgment. *Id.*

A plaintiff may establish the required causal link by demonstrating either: 1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or 2) a pattern of antagonism or retaliatory animus coupled with timing. *See Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir.1997). In the absence of proof, a plaintiff may also show, from the evidence gleaned from the record as a whole, the trier of fact should infer causation. *See Smith v. Central Dauphin Sch. Dist.,* 355 Fed. Appx. 658, 668 (3d Cir.2009) (citing *DeFlaminis,* 480 F.3d at 267). If these elements are proven, a defendant may defeat the retaliation claim by showing it would have taken the same action even if the plaintiff had not engaged in the protected activity. *Lauren W ex. rel. Jean W,* 480 F.3d at 267.

Plaintiffs allege they complained about discriminatory actions and as a result received less work assignments. Plaintiffs baldly assert they "continually complained to the Defendant of their discriminatory practices and no action was taken to correct this discrimination. Instead, the Defendant retaliated against the Plaintiffs by reducing the number of work days thus reducing wages and hours as demonstrated above." (ECF Doc. No. 39, p.13). Again, these bald averments are not supported by factual evidence. Plaintiffs cite no testimony or other documentary evidence of continual complaints of discriminatory practices, or evidence showing Brock and Drayton suffered reduced work days, wages or hours <u>because</u> of alleged complaints. There is no evidence from which a jury could infer Defendants retaliated against Plaintiffs in response to their complaints of discriminatory practices. We also do not find Plaintiffs' statistical data may be construed to infer causation, as they further suggest. The statistics merely show a

11

snapshot of wages and hours for a group of workers. Plaintiffs' claim they have lost hours may show damage, but does not indicate causation due to retaliation.

After thoroughly reviewing the record evidence, we find Plaintiffs fail to show any evidence to support a retaliation claim. Plaintiffs allege, but adduce no evidence: They engaged in any activity protected by Title VII; the union caused them to suffer an adverse employment decision; of but-for causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar,* 133 S.Ct. at 2533.   Plaintiffs claim the union policy allows third party contractors to directly hire outside of the Hiring Hall. This may be an internal grievance but there is no evidence the union directs the contractors to not hire Plaintiffs because of their race or in retaliation for being "troublemakers". In the absence of any evidence from which Plaintiffs could prevail on this claim, summary judgment in favor of Defendants is granted.[9]

As Plaintiffs cannot show a dispute of material facts as to the legal issues, and after giving them at least two opportunities to properly support or address the facts relating to causation, we grant Defendants' motion. Fed.R.Civ.P. 56 (c)(1) and (e).[10]

---

[9] In their Complaint, Plaintiffs assert they suffered loss of wages and hours because of Local 542's system of dispatching work, but there is no evidence they lost any work in retaliation for complaints about discrimination.

[10] A non-moving party must support their assertion that a material fact is in dispute by: '(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials'; or '(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or an adverse party cannot produce admissible evidence to support the fact.' Fed.R.Civ.P. 56(c)(l).

12

### C. Plaintiffs' race discrimination claim must be dismissed.

To the extent Plaintiffs claim race discrimination under Title VII, they also have not directed the Court to any evidence. To state a *prima facie* case of race discrimination, Plaintiffs must come adduce evidence to establish the following four elements:

(1) he is a member of a protected class;

(2) he was qualified for the position he sought to attain or retain;

(3) he suffered an adverse employment action; and

(4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.

*Daniels v. Sch. Dist. of Philadelphia*, 982 F. Supp. 2d 462, 479 (E.D. Pa. 2013) *aff'd* 776 F.3d 181 (3d Cir. 2015).

Plaintiffs contend Local 542's Business Manager labeled them as "troublemakers" and Defendants created a hostile work environment. Plaintiffs each allege, but submit no credible facts supporting the claim *they* do not receive the hours and wages of white counterparts based upon their race. There is no evidence from which a factfinder could infer Plaintiffs were qualified for a particular position and suffered adverse employment action under circumstances which could give rise to a reasonable inference of *intentional* discrimination.

### III.   Conclusion

Brock and Drayton allege they do not receive the same hours and wages as their Caucasian union brothers because their union permits their members to solicit contractors directly and those contractors may have elected to hire Caucasians rather than them. This appears to be an internal union grievance as to a facially neutral policy affecting the Plaintiffs.

Outside of their beliefs, Plaintiffs have not demonstrated sufficient evidence of disparate impact caused by the union's policy or of retaliation by the union for complaining about this policy.